The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated July 26, 1994, a Form 21 agreement approved by the Commission on February 21, 1993, and at the hearing as:
STIPULATIONS
1. On December 4, 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant was self-insured, with Alexsis being the administrator.
4. Plaintiff's average weekly wage was $245.00, yielding a compensation rate of $163.34 per week.
5. Plaintiff's medical records were stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 34 year-old divorced female with five children ranging from four to fourteen years of age. After graduating from high school she attended Jefferson College in Greensboro for two years taking business courses. Plaintiff is also a certified nursing assistant and has worked in a similar capacity for a number of different employers.
2. In June of 1991 she became employed as a certified nursing assistant at defendant's long term health care facility responsible for patient care, including as part thereof, bathing, feeding and dressing the same patients as well as turning them in their beds and assisting them in and out of bed, requiring the type of lifting in excess of 25 pounds prohibited by the permanent back injury sustained on December 4, 1992.
3. On December 4, 1992, plaintiff was attempting to use a hoyer lift to lift a heavy elderly female resident weighing in the 160 to 170 pound range from her bed to a geri chair. The hoyer lift tilted over when the resident became agitated, forcing plaintiff to initially catch and prevent her from falling to the floor and then catch the falling hoyer lift, resulting in a disabling back strain with associated sciatica manifested by back and left leg pain and thereby the admittedly compensable back injury that has been subject of prior Industrial Commission awards of total and partial disability benefits.
4. Plaintiff was initially treated at the offices of Greensboro Medical Associates by Doctors Walter Pharr and Arthur Green, who provided a conservative course of treatment, including the non-steroidal anti-inflammatory medication Ansaid or Naprosyn, before being referred to an orthopedic surgeon, Dr. Phillips J. Carter, because of her continued complaints.
5. Prior to her injury plaintiff was predisposed to developing an ulcer and because of her dyspepsia had experienced episodes of epigastric discomfort not only requiring medical treatment, including being evaluated in April of 1992 by a gastroenterologist, Dr. John C. Hayes, but three months earlier being placed on Zantac to alleviate stomach irritation and the resulting risk of ulcers. Plaintiff continues to be on the same drug to date. Unfortunately, Ansaid or Naprosyn, the non-steroid anti-inflammatory prescribed by Doctors Pharr and Green initially and then Dr. Carter, symptomatically aggravated plaintiff's dyspepsia resulting in epigastric discomfort and requiring that she be taken off that drug to prevent her from actually developing an ulcer. In lieu thereof plaintiff was placed on Darvocet, which is a pain medication as opposed to an anti-inflammatory, but is a potentially addictive drug and she ultimately had to be taken off it. Currently she is receiving Relafen, which is an anti-inflammatory that is absorbed in the intestine rather than the stomach reducing the potential risk of again developing gastrointestinal symptoms, as well as Cytotec, which replaces mucous in the stomach providing additional protection from stomach irritation along with the Zantac she was already taking because of her existing risk of dyspepsia.
6. Upon coming under the care of Dr. Carter on January 20, 1993, he similarly prescribed a conservative course of treatment consisting of various medications, including initially Ansaid or Darvocet followed by Darvocet and ultimately Relafen and Cytotec, physical therapy, restricted activity, home exercise and back support.
7. With treatment, plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following her December 4, 1992 back injury on or about March 30, 1993 when Dr. Carter released her from his care, at which time she retained an eight (8) percent permanent-partial disability of the back as a result of the same injury and has not since sustained a substantial change, for the better or worse, in her condition. She is not a surgical candidate and the only treatment she currently requires is a home exercise program as well as the above-described medications, Relafen and Cytotec, which are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with her permanent back injury by providing her symptomatic relief as well as reducing the risk that she will experience a recurrence of her gastrointestinal symptoms ultimately leading to an ulcer.
8. Because of her permanent back injury plaintiff is unable to return to her regular certified nursing assistant's job for defendant-employer or other employments similarly requiring lifting in excess of 25 pounds. Although when she was unable to return to her regular certified nursing assistant's job or other employments similarly requiring lifting in excess of 25 pounds, defendant-employer engaged the services of a vocational rehabilitation specialist, Comprehensive Rehabilitation Associates, Inc., in an attempt to provide the type of lighter work required. The only work plaintiff was capable of was the part-time clerical assistant's job she began on May 10, 1993 working four hours a day earning an average weekly wage of $108.94 based on her $466.90 earnings during the 30 days that she worked in that capacity before being forced to move to Cleveland, Ohio to live with her uncle because of the actions of her abusive, assaultive former husband.
9. Following her return to part-time work as a clerical assistant, the Industrial Commission entered its last award herein establishing plaintiff's wage earning capacity and pursuant to which defendant-employer was bound to compensate plaintiff during her resulting partial incapacity from the permanent back injury involved, which did not then allow her to return to her regular certified nursing assistant's job or similar employment requiring lifting in excess of 25 pounds; but rather, only the part-time job as a clerical assistant earning less wages.
10. Since the same award of partial disability benefits, plaintiff has not sustained a substantial change in her condition resulting in her being able to return to her regular certified nursing assistant's job or other work earning the same wages — much less to any employment earning more than she did in the part-time clerical assistant's job that was the subject of the award of partial disability benefits then establishing her wage earning capacity as a result of her permanent back injury and one under which the presumption of partial incapacity continues until plaintiff is able to return to work earning a greater wage, which she has not to date.
11. On June 8, 1993, after doing the part-time clerical assistant's job for a month, plaintiff had to resign from defendant's employ and move to Cleveland, Ohio to live with an uncle who was willing to take her in when she no longer had a place to live in North Carolina because of the conduct of her abusive, assaultive former husband. Unfortunately, plaintiff's former husband subsequently followed her to Cleveland, forcing her to move out of her uncle's house and into a shelter. Ultimately, in the spring of 1994 she returned to North Carolina, after living in Cleveland for ten months. After moving back to North Carolina, plaintiff contacted defendant-employer seeking work; however, it no longer had work available. She has also sought employment on her own, but has not yet been successful in obtaining any work.
12. Although after the hearing defendant-employer engaged the services of another vocational rehabilitation specialist, David Steinbeck of GAB Business Services, it was not for the purpose of being actively involved in seeking to assist plaintiff in obtaining the type of suitable alternate lighter work required by her permanent back injury as the original vocational rehabilitation specialist had been when they were able to assist in providing the part-time clerical assistant's job in May of 1993 that was subject of the Industrial Commission's binding award of partial disability benefits thereby establishing her wage earning capacity; but rather, for the limited purpose of a labor survey identifying the availability of the type of potentially suitable alternate lighter work required by plaintiff's permanent back injury that did not involved lifting in excess of 25 pounds. There is no credible evidence at this time or at any time since the last award of partial disability benefits that suitable alternate lighter work is available for someone of plaintiff's age, education, background and work experience having the physical limitations that she does that would allow her to earn greater wages than she did as a part-time clerical assistant for defendant-employer — much less that she can obtain such work or that she has otherwise sustained a substantial change in her wage earning capacity since the Industrial Commission's last award of partial disability establishing her wage earning capacity because of the permanent back injury sustained. To the extent defendant-employer does desire to engage the services of a vocational rehabilitation specialist to actively assist plaintiff in attempting to obtain the type of suitable alternate lighter work required by her permanent back injury as it similarly did in finding her the part-time clerical assistant's job; plaintiff is obligated to cooperate in any reasonable vocational rehabilitation efforts or to have her weekly compensation benefits suspended until she does; however, there is no reason to believe that she will not cooperate.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the permanent back injury she sustained on December 4, 1992 plaintiff has remained partially disabled since May 10, 1993 entitling her to compensation at a rate of two-thirds of the difference between the $245.00 average weekly wage she was able to earn at the time of her injury and the $108.94 average weekly wage that she was able to earn as a part-time clerical assistant for defendant-employer. The difference in these wages is $136.06, which yields a compensation rate of $90.71 per week from May 10, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains partially disabled for a maximum of 300 weeks from the December 4, 1992 date of injury, subject to the temporary-total disability benefits received under the Industrial Commission's original award being deducted therefrom as well as a credit for the partial disability benefits paid under the subsequent Industrial Commission Award thereof and also to a change of condition, medical or employment. N.C. Gen. Stat. § 97-30.
2. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the December 4, 1992 back injury giving rise hereto, including the Relafen and Cytotec that she continues to require. G.S. § 97-25.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her partial disability, compensation at a rate of $90.71 per week from May 10, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains partially disabled for a maximum of 300 weeks from the December 4, 1992 date of injury, subject to a deduction for the temporary-total disability benefits paid under the Industrial Commission's original award as well as a credit for the partial disability benefits paid under the Industrial Commission's subsequent award after May 10, 1993 and also to a change of condition, medical or employment. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the accrued partial disability benefits due under the above award is hereby approved for plaintiff's counsel, which shall deducted from the same award and forwarded directly thereto. For the balance of his fee, defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the December 4, 1992 permanent back injury giving rise hereto, including as part thereof the Relafen and Cytotec she continues to require when bills for the same are submitted in accordance with the Industrial Commission's Rules.
4. Defendant shall bear the costs, including as part thereof an expert witness fee in the amount of $200.00 to Dr. Tim Nice, who appeared by way of deposition and gave expert medical testimony herein as well as the $250.00 and $200.00 expert witness fees respectively awarded Dr. Carter and the vocational rehabilitation specialist involved, David Steinbeck, to the extent the same have not already been paid.
 S/ _________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________ J. RANDOLPH WARD COMMISSIONER
LKM/bjp